**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| ALAINA CASTILLO NOGUEZ, | Case No. 3:26-cv-215-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| STATE OF OREGON; WARREN ROBERTS; JOE BUGHER; DEENA LOZIER; JACKIE SOLGAN; LASSIE (LESLIE) FISCHER; and RICHARD GREENMAN, | |
| Defendants. | |

Carl L. Post and John D. Burgess, SNYDER, POST & BURGESS, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Yuna K. Yang, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendants State of Oregon, Deena Lozier, and Leslie Fischer.

Jeanne F. Loftis and Justin L. Meyer, BAKER STERCHI COWDEN & RICE LLC, 805 SW Broadway, Suite 2020, Portland, OR 97205. Of Attorneys for Defendant Warren Roberts.

Jeremy C. Rice and Keith J. Bauer, PARKS BAUER LLP, 570 Liberty Street SE, Suite 200, Salem, Oregon 97301. Of Attorneys for Defendant Joe Bugher.

**Michael H. Simon, District Judge.**

Plaintiff Alaina Castillo Noguez filed this lawsuit under 42 U.S.C. § 1983, alleging that

Defendants Warren Roberts, Joe Bugher, Deena Lozier, Jackie Solgan, Lassie (Leslie) Fischer,

PAGE 1 – OPINION AND ORDER

and Richard Greenman (collectively, the "Individual Defendants") violated her Eighth Amendment rights through deliberate indifference to her serious medical needs while she was in the custody of the Oregon Department of Corrections ("ODOC"). ECF 1 at ¶ 1-2. Plaintiff also asserts a common law negligence claim against the State of Oregon under the Oregon Tort Claims Act. *Id.* at ¶ 1. Plaintiff later filed a First Amended Complaint ("FAC"), which is the operative pleading. ECF 19. Now before the Court is Defendant Warren Roberts' motion to dismiss under Rule 12(b)(6). ECF 22. For the reasons stated below, the Court denies Roberts' motion to dismiss.

## STANDARDS

A motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Plaintiff, Alaina Castillo Noguez, entered ODOC custody on August 9, 2022, and was held at ODOC's Coffee Creek Correctional Facility Medium ("CCCM") when she allegedly suffered serious injuries. FAC at ¶ 58. On February 21, 2024, Plaintiff and another adult in custody were ordered to move a large and heavy coin machine so they could paint the wall of the staff lobby at CCCM. *Id.* at ¶ 59-60. Defendant Richard Greenman, the CCCM physical plant manager, was supervising the painting but left the area while Plaintiff and the other adult in custody were repositioning the coin machine. *Id.* at ¶¶ 59-61. While Plaintiff was moving the coin machine back to the wall, the machine tipped over and fell on her, crushing her finger and causing a partial amputation. *Id.* at ¶ 62.

After receiving first aid at CCCM, ODOC staff brought Plaintiff to the Tualatin Meridian Park Hospital. *Id.* at ¶¶ 63-64. After diagnosis and stabilization, the treating physician ordered a follow-up examination in three to five days to assess the circulation in Plaintiff's finger and referred Plaintiff to a surgeon. *Id.* at ¶ 64. ODOC staff returned Plaintiff to CCCM later that afternoon, where she experienced increasing pain and requested medical care. *Id.* at ¶ 65. After a

PAGE 3 – OPINION AND ORDER

period of delay, CCCM staff gave Plaintiff pain relief medication. *Id.* During the next month, Plaintiff suffered worsening pain, expressed her concerns, and requested care. *Id.* at ¶¶ 66, 68-71, 73-77, 79. CCCM staff allegedly dismissed her concerns. *Id.* When outside doctors prescribed medication, CCCM staff allegedly denied Plaintiff these prescriptions. *Id.* at ¶¶ 68, 71, 77, 79.

On February 29, 2024, eight days after her injury, Plaintiff returned to the hospital and saw the treating physician. *Id.* at ¶ 68. On March 6th, she saw the surgeon. *Id.* at ¶ 70. When the surgeon presented treatment options, CCCM staff and ODOC leadership (including Roberts) failed to schedule an appointment for follow up care with the surgeon, allegedly exacerbating Plaintiff's injury. *Id.* at ¶¶ 70-73.[1] After Plaintiff suffered growing pain and compromised circulation in her finger, ODOC staff returned Plaintiff to the hospital on March 20th, where the surgeon amputated part of her finger. *Id.* at ¶ 77. Even after this amputation, Plaintiff's ODOC staff allegedly rejected Plaintiff's requests for effective medication for her nerve pain. *Id.* at ¶ 79. Plaintiff states that she continues to suffer pain, nerve damage, and hand function impairment resulting from the delayed treatment, infection, necrosis, and partial amputation. *Id.*

At all relevant times, Roberts and Bugher (then the Assistant Director of ODOC for Health Services) exercised authority over medical policies, specialty referrals (such as the "ODOC-rejected surgery" recommendation), and approval of non-formulary medications (such as the ODOC-rejected gabapentin and hydrocodone prescribed for Plaintiff). *Id.* at ¶¶ 16-22, 75.

ODOC's medical policies, which Roberts and Bugher approved, state that "Adults in Custody who require emergent, urgent, or other medically necessary care can receive that care if ordered by any health services prescribing practitioner." *Id.* at ¶ 24 (quotation marks omitted). Within ODOC, Therapeutic Level of Care Committees ("TLC") assess medical necessity and

---

[1] At the time of Plaintiff's injury, Roberts was the Chief Medical Officer at ODOC.

review proposed medical treatment for final approval. *Id.* at ¶ 25-27. Among the decisions that the ODOC's TLC considers are requests for out-of-facility care, including emergency and urgent care. *Id.* at ¶¶ 36-37. TLC meetings are held on a weekly schedule, rather than convening in response to a specific medical request, but this often creates delays in receiving care. *Id.* at ¶¶ 36-37. Plaintiff alleges that Roberts required all medically necessary claims to be approved in advance by TLC, subjecting every claim to alleged delays. *Id.* at ¶ 27. Plaintiff explains that Roberts and Bugher allegedly were aware of the delays caused by the scheduling practices of the TLC. *Id.* at ¶ 39.

Plaintiff also alleges that Roberts made all decisions of the TLC himself, rather than collaborating on those decisions with the other TLC members, ODOC's prescribing practitioners. *Id.* at ¶ 29. TLC typically denied requests for medical care. *Id.* at ¶ 25. Further, Plaintiff asserts that Roberts rejected care requests because he prioritized budget health, not the health of people in the custody of the ODOC. *Id.* at ¶ 36.

In addition, Plaintiff maintains that Roberts and Bugher's policies of denying and delaying care forced adults in ODOC custody to file writs of habeas corpus in Oregon courts to seek health care. *Id.* at ¶ 49. Roberts and Bugher allegedly would approve care only in response to a court order or other intervening event such as a settlement. *Id.* at ¶ 50. As further evidence of the systemic nature of the alleged "deny and delay" scheme, Plaintiff contends that the medical facility at CCCM was placed on probation by the National Commission on Correctional Health Care in part due to the poor delivery of care. *Id.* at ¶ 56.

Finally, Plaintiff alleges that before filing the FAC, she exhausted all available administrative remedies (*id.* at ¶ 80), as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Plaintiff adds that ODOC's medical care grievance system was made

meaningless by the automatic rejections by Roberts and Bugher. FAC at ¶¶ 45-46. Thus, according to Plaintiff, ODOC's grievance system was "unavailable" for purposes of the PLRA.

## DISCUSSION

Roberts has moved to dismiss Plaintiff's § 1983 claim against him on four grounds: (1) he is entitled to qualified immunity; (2) he did not violate Plaintiff's Eighth Amendment right to be free from deliberate indifference to her serious medical needs; (3) Plaintiff's § 1983 claims cannot succeed under a theory of *respondeat superior*; and (4) Plaintiff has not exhausted her administrative remedies as required by the PLRA.

### A. Qualified Immunity

Section 1983 provides a cause of action against any person who, under color of state law, "deprives any person of any rights, privileges, or immunities secured by the Constitution." *Carley v. Aranas*, 103 F.4th 653, 659 (9th Cir. 2024) (cleaned up). The Supreme Court has "consistently . . . held that government officials are entitled to some form of immunity from suits for damages." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).

To determine whether Roberts is entitled to qualified immunity, the Court considers two elements: "(1) whether [Roberts'] conduct violated a constitutional right; and (2) whether that right was 'clearly established' at the time of the violation." *Carley*, 103 F.4th at 659 (quoting *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019)). Plaintiff must prove that "precedent on the books" at the time Roberts acted "would have made it clear to [him] that [his] actions violated the Constitution." *See Carley*, 103 F.4th at 662.

The Ninth Circuit has explained that the clearly established right must be more narrowly articulated than simply, "prison officials cannot deliberately disregard a substantial risk of serious harm to an inmate." *Hampton v. California*, 83 F.4th 754, 769 (9th Cir. 2023); *see also Carley*, 103 F.4th at 660 (holding that the clearly established right must be articulated narrowly

and specifically). But "applying this doctrine here, Plaintiff is not required to point to a prior case holding that prison officials can violate the Eighth Amendment by" rejecting out-of-facility care for a partially amputated finger injury (or other fact-specific scenarios). *See Hampton*, 83 F.4th at 769. "Binding caselaw 'need not catalogue every way in which' prison conditions can be constitutionally inadequate" for the Court "'to conclude that a reasonable official would understand that his actions violated'" Plaintiff's rights. *See id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016)). Rather, the Court considers whether Plaintiff has alleged sufficient facts showing that Roberts, as the ODOC Chief Medical Officer in February and March of 2024, would have been on notice at that time that his policies and practices of denying, delaying, and interfering with prisoner care were unconstitutional. *See Carley*, 103 F.4th at 661.

Plaintiff argues that Roberts was on notice that his conduct violated a clearly established right. The Court agrees. Forty-eight years before Plaintiff's injury, the United States Supreme Court in *Estelle v. Gamble* clearly established that prison officials denying, delaying, or interfering with a person's medical care while they are in prison custody is an Eighth Amendment violation. *See* 429 U.S. 97, 104-05 (1976) (holding that deliberate indifference is manifested by prison doctors in their response to a prisoner's needs or by prison guards intentionally denying or delaying access to care or intentionally interfering with the care after treatment is prescribed); *see also Russell v. Lumitap*, 31 F.4th 729, 741-42 (9th Cir. 2022) (holding that the court need not point to cases dealing with the specific type of symptoms the plaintiff displayed); *Stewart v. Aranas*, 32 F.4th 1192, 1195-96 (9th Cir. 2022) (holding that prison officials were not entitled to qualified immunity when they maintained a "wait and see" approach that led to a person's deteriorating condition). Based on these cases, a reasonable

PAGE 7 – OPINION AND ORDER

prison medical official would have understood that knowingly maintaining or using systems that delay urgent specialty care, obstruct prescribed medication, and leave an incarcerated person with worsening necrosis and severe pain without timely intervention would violate the Eighth Amendment. Thus, the Court finds that Plaintiff has alleged sufficient facts under the "clearly established" prong to defeat a claim of qualified immunity.[2]

## B. Deliberate Indifference

Oregon "has an 'obligation to provide medical care for those whom it is punishing by incarceration.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle*, 429 U.S. at 103). Oregon's failure to do so "can constitute an Eighth Amendment violation" under § 1983. *Id.* "To prevail on an Eighth Amendment claim for inadequate medical care," plaintiff "must show 'deliberate indifference' to [her] 'serious medical needs.'" *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation and quotation marks omitted).

To state a claim under the Eighth Amendment in the context of medical care of a convicted person in custody, a plaintiff must adequately allege two things: (1) a deprivation serious enough to constitute cruel and unusual punishment; and (2) deliberate indifference. *Colwell*, 763 F.3d at 1066. The first element is judged based on an objective standard, while the second element is a subjective analysis. *Id*. For the objective element, a plaintiff must demonstrate that she had a serious medical need that went unmet. *Id.* Objectively, a serious medical need exists if a defendant's failure to treat the injury could result in further significant

---

[2] In his qualified immunity argument, Roberts also contends that Plaintiff has failed adequately to allege a constitutional violation. *See* ECF 22 at 8-10. The Court addresses that issue in the next two sections of this Opinion and Order.

PAGE 8 – OPINION AND ORDER

injury to the plaintiff or cause her "unnecessary and wanton infliction of pain." *See id.* (citing *Jett*, 439 F.3d at 1096); *see also McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1997) (finding that a serious medical need includes the existence of chronic and substantial pain). Here, Plaintiff alleges that she was injured while in custody, she was in substantial pain, the failure to treat her resulted in further significant injury (the resulting amputation), and the alleged failure and delays resulted in ongoing nerve pain and permanent reduction in hand function. At the pleading stage, Plaintiff has sufficiently alleged this objective element.

A defendant is deliberately indifferent under the subjective element only if the plaintiff sufficiently alleges that the defendant "knows of and disregards an excessive risk to [the plaintiff's] health and safety." *Colwell*, 763 F.3d at 1066. "Deliberate indifference 'may appear when prison officials deny, delay, or intentionally interfere with medical treatment.'" *Id.* The Court does not need to defer to the judgment of prison doctors or administrators when assessing whether there has been deliberate indifference alleged. *See id.*; *see also Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

Specific to ODOC's treatment of Plaintiff and her injury, Plaintiff alleges multiple denials of prescribed medication, at least one delayed out of facility appointment for follow up care, and one rejected surgical intervention related to her care. Plaintiff further alleges that Roberts received or should have received notice of Plaintiff's urgent needs for follow-up care. Together, these allegations are sufficient to show that Roberts and his subordinates denied medication, delayed follow-up care, and interfered with medical treatment by the hospital's treating physician and the surgeon. Further, Plaintiff's allegations are sufficient to show that Roberts was deliberately indifferent. Thus, the Court finds that Plaintiff has alleged sufficient facts for an Eighth Amendment claim against Roberts.

PAGE 9 – OPINION AND ORDER

## C. *Respondeat Superior*

Roberts argues that he cannot be held liable merely for his subordinates' unconstitutional conduct under the doctrine of *respondeat superior* (vicarious liability for the actions of one's subordinates). *See Iqbal*, 556 U.S. at 676. Although Roberts is correct, a supervisor can be liable under § 1983 for the actions of subordinates if the supervisor knew that subordinates were violating a plaintiff's rights but failed to stop or prevent that violation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In addition, Roberts may be held liable under § 1983 for his *own* acts or omissions. *See Iqbal*, 556 U.S. at 677.

> A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor. Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates.

*Starr*, 652 F.3d at 1206-07. Thus, Roberts may be found liable if either: (1) he was personally involved in violating Plaintiff's constitutional rights; or (2) a sufficient causal connection exists between Roberts' allegedly wrongful conduct and the deprivation of Plaintiff's constitutional rights. *See id.* at 1207. Here, Plaintiff alleges that Roberts is liable under both theories. In addition, Plaintiff alleges that Roberts is liable as a supervisor under § 1983 because he knew about his subordinates' violations of Plaintiff's rights but failed to prevent them. *See Taylor*, 880 F.2d at 1045.

As alleged in Plaintiff's FAC, Roberts' actions and inactions are analogous to those of the sheriff in *Starr v. Baca*. In that case, the sheriff oversaw a jail that he knew had serious safety problems. *Starr*, 652 F.3d at 1208. The sheriff's status as a supervisor did not shield him from

PAGE 10 – OPINION AND ORDER

liability under § 1983 because he failed to act and that failure was deliberately indifferent to an inmate's Eighth Amendment rights. *Id.* Here, Plaintiff alleges that Roberts oversaw medical providers that he knew were delaying or interfering with care (thus, acting with deliberate indifference). Further, Roberts required requests for out-of-facility emergency care be presented to the TLC, which he allegedly knew would result in delayed care, and he later rejected those requests. As alleged, Roberts rejected care requests because he prioritized the health of ODOC's budget more than the health of the people in ODOC's custody. Finally, Plaintiff alleges that Roberts received notice of Plaintiff's deteriorating medical condition but failed to intervene. Collectively, Plaintiff's allegations show Roberts was personally involved in and knew of but failed to take appropriate action to prevent violation of Plaintiff's constitutional rights. The Court finds that the allegations sufficiently allege Roberts' liability under § 1983.

## D.  Exhaustion of Administrative Remedies

Finally, Roberts argues that Plaintiff has failed to allege facts showing that she exhausted available administrative remedies at the ODOC before filing a lawsuit, as required by the PLRA. *See* 42 U.S.C. § 1997e(a). A plaintiff's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proved by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, a plaintiff is not required to say anything about exhaustion in a complaint. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). Further, the Ninth Circuit employs a burden-shifting framework to analyze administrative exhaustion: the defendant must prove that there was an available administrative remedy that the prisoner did not exhaust. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). The burden would then shift to a plaintiff to show exhaustion or unavailability of remedies. *Id.*

"In those rare cases where a failure to exhaust is clear on the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6)." *Albino*, 747 F.3d at 1169.

PAGE 11 – OPINION AND ORDER

This, however, is a high bar. A court only dismisses for failure to exhaust at the pleading stage when a plaintiff includes facts in a complaint that clearly show that the plaintiff did not avail himself or herself of available administrative processes. *See, e.g.*, *Coyle v. Brown*, 2024 WL 4279424, at *3 (D. Or. Aug. 27, 2024) (finding failure to exhaust because plaintiff acknowledged in his complaint that the state prison had a grievance procedure in place and that he did not file a grievance); *Ponce v. Fresno Cnty. Sheriff's Dep't Arresting/Booking Deputies*, 2023 WL 2312394, *5 (E.D. Cal. Mar. 1, 2023) (dismissing without prejudice a complaint in which the plaintiff admitted that he did not exhaust administrative remedies), *report and recommendation adopted sub nom. Ponce v. Fresno Cnty. Sheriff's Dep't*, 2023 WL 3752309 (E.D. Cal. June 1, 2023); *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (holding that when a prisoner affirmatively but not conclusively pleads exhaustion on the face of a complaint, the prisoner should be given the opportunity to address the issue).

Here, Plaintiff pleads that she exhausted all available administrative remedies. Plaintiff further alleges that Roberts' and Burgher's automatic rejections made the grievance system meaningless and functionally unavailable for purposes of the PLRA. It is not clear from the face of the FAC that Plaintiff failed to exhaust any meaningfully available administrative remedies. Indeed, reading the FAC in the light most favorable to Plaintiff, it appears that she did. Because "failure to exhaust" is an affirmative defense, Roberts may raise this issue in a motion for summary judgment or at trial. *See Perttu v. Richards*, 605 U.S. 460, 469 (2025); *Williams*, 775 F.3d at 1191 (holding that the correct procedure for determining administrative exhaustion is a motion for summary judgment).

In summary, the Court finds that Plaintiff has sufficiently alleged that: (1) Roberts is not entitled to qualified immunity; (2) Roberts was deliberately indifferent to Plaintiff's medical

PAGE 12 – OPINION AND ORDER

needs; (3) Roberts' alleged liability under § 1983 is not based on a theory of *respondeat superior*; and (4) her claim should not be dismissed at this stage of the litigation for failure to exhaust all available administrative remedies.

## CONCLUSION

The Court DENIES Defendant Roberts' Motion to Dismiss, ECF 22.

**IT IS SO ORDERED.**

DATED this 29th day of July, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge